UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HISHAM ZOABY,<br>   Plaintiff,<br>  v.<br>JPMORGAN CHASE BANK, N.A.,<br>   Defendant. | Case No.  14-cv-01545-BLF<br><br>**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION** |

  This is a lawsuit for wrongful foreclosure, among other claims, filed by *pro se* Plaintiff Hisham Zoaby.  Before the Court is the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant JP Morgan Chase Bank, N.A. ("Chase").  (Def.'s Mot., ECF 10)  Plaintiff filed opposition but did not substantively respond to any of Defendant's arguments.[1]  (Pl.'s Opp., ECF 16)  The Court heard oral argument on the motion on July 31, 2014, after which it deemed the matter submitted.  After careful consideration of the parties' respective written submissions and oral arguments, for the reasons stated herein, the Court finds that the action must be dismissed for lack of subject matter jurisdiction.

**I.  BACKGROUND**

  In September 2004, Plaintiff purchased a property located at 251 Sunol Street San Jose, CA 95126 ("Property") with a mortgage from New Century Mortgage Corp., which loan was eventually transferred to Washington Mutual Bank F.A. ("WaMu").[2]  (Compl. ¶¶ 1.3, 2.1, ECF 1-

---

[1] Although Plaintiff's opposition was untimely, the Court has, in view of Plaintiff's *pro se* status, read and considered all of Plaintiff's filings in ruling on the present Motion to Dismiss.

[2] Plaintiff also alleges that Quality Loan Service Corp., "[a] Professional foreclosure service" is the contact given for the WaMu loan.  Quality Loan Service Corp. is not named as a defendant in this lawsuit.

1) Plaintiff obtained a second mortgage from National City Bank in January 2006, though the ultimate holder and fate of this latter loan is not alleged. (*Id.*)

Plaintiff alleges that he made timely payments and had "an excellent record" until mid-2006-07, when he was caught up in the "housing crises" and began having financial problems. Though he communicated with his lenders and attempted to bring his mortgage current, Plaintiff alleges that "[a] zealous debt collector actually refused the money stating they wanted the full balance."[3] (*Id.*) Without identifying any specific time period, Plaintiff further alleges that he "at this time was told that he was being foreclosed." (*Id.*) Despite living in the Property at the time, Plaintiff alleges that he "only received the Trustee Auction Sale Notice on May, 2008." (*Id.*) The Property "went to auction" on June 6, 2008 and was sold to WaMu.[4] (*Id.*; *see also* Def.'s RJN Exhs. A-E, ECF 11)

WaMu was later seized by the Office of Thrift Supervision and placed into the receivership of the Federal Deposit Insurance Corporation ("FDIC"). On September 25, 2008, the FDIC transferred certain WaMu assets—including the Property—to Defendant Chase under a Purchase and Assumption Agreement ("P&A").[5] (Def.'s Mot. 8; *see also* Def.'s RJN Exh. F, Art. II, § 2.5) The P&A provided that the FDIC, not Chase, would retain liabilities associated with the assets acquired from WaMu:

---

[3] Plaintiff does not allege the identity of this debt collector.

[4] Defendant has requested that the Court take judicial notice of five documents recorded on the Property. (Def.'s Request for Judicial Notice ("RJN") Exhs. A-E, ECF 11) Specifically: Exhibit A is a Deed of Trust recorded on November 2, 2005 in connection with the WaMu loan; Exhibit B is a Deed of Trust recorded on January 13, 2006 in connection with the National City Bank loan; Exhibit C is a Notice of Default recorded on March 4, 2008 in connection with the WaMu loan; Exhibit D is a Notice of Trustee's Sale recorded on June 6, 2008; and Exhibit E is a Trustee's Deed Upon Sale recorded on July 8, 2008. The Court GRANTS Defendant's request with respect to these exhibits, finding them "not subject to reasonable dispute" and capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Gamboa v. Tr. Corps*, No. 09-0007 SC, 2009 WL 656285, at *2-3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of similar recorded documents).

[5] Defendant further requests that the Court take judicial notice of the Purchase and Assumption Agreement between Chase and the FDIC, dated September 25, 2008, which is publicly available on the FIDC's website. (Def.'s RJN Exh. F) The Court GRANTS Defendant's request, as the agreement is a public record not subject to reasonable dispute. Fed. R. Evid. 201(b); *see also Nieves v. JPMorgan Bank, N.A.*, No. C 11-05260 WHA, 2012 WL 478520, at *4 (N.D. Cal. Feb. 14, 2012) (taking judicial notice of same agreement).

> <u>Borrower Claims</u>.  Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by [WaMu] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [WaMu], or otherwise arising with [WaMu's] lending or loan purchase activities are specifically *not assumed* by [Chase].

(Def.'s RJN Ex. F, Art. II, § 2.5 (emphasis added))  Chase sold the Property to a third party on March 19, 2009.  (Compl. ¶ 2.1)

On March 7, 2014, Plaintiff commenced the present action against Chase in the Superior Court for the County of Santa Clara, which Chase promptly removed to federal court on the basis of federal question and diversity jurisdiction.  (*See* Compl., ECF 1-1)  Chase now moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), arguing that Plaintiff's claims are barred by the applicable statutes of limitations, that he has failed to assert any legally cognizable claims, and that Plaintiff cannot hold Defendant liable for the alleged misconduct of WaMu, whose liability Defendant expressly disclaimed.  (*See* Def.'s Mot.)  Because Defendant raised arguments suggesting a lack of subject matter jurisdiction over Plaintiff's claims, the Court considers first whether it has jurisdiction over the asserted claims.

**II.   LEGAL STANDARDS**

"A document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  This Court has an independent obligation to insure that it has subject matter jurisdiction over a matter and may raise the question, *sua sponte*, at any time during the pendency of the action.  *See* Fed. R. Civ.

P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). Typically, a defect in subject matter jurisdiction is brought to the court's attention by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which may be either a facial or a factual challenge to the court's jurisdiction to hear the case. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that even if assumed true, "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Because the jurisdictional problem appears on the face of the Complaint in this case, the Court assumes that Plaintiff's allegations are true.

If a motion to dismiss is granted, a court should normally grant leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted).

## III. DISCUSSION

### A. Jurisdiction Over Plaintiff's Claims

Construing the Complaint as generously as possible, Plaintiff appears to be asserting one federal claim under the Fair Debt Collection Practices Act ("FDCPA"),[6] 15 U.S.C. § 1601 *et seq.*, and five state claims for wrongful foreclosure; breach of contract; slander of title; violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and infliction of emotional distress. (*See generally* Compl.) The misconduct alleged in support of these claims are an unidentified debt collector's refusal to accept payment of "arrearages," (*id.* ¶¶ 2.1, 5.1); failure to provide notice of foreclosure, (*id.* ¶ 2.1); recording "various documents including a Notice of Trustee Sale" on the Property, (*id.* ¶ 3.1); and WaMu's failure to provide proof that it owned the loan note, (*id.* ¶ 6.2). It is clear that all of these alleged acts or omissions were perpetrated by WaMu or some other party *before* Chase acquired WaMu's assets from the FDIC on September 25, 2008. In other words, Plaintiff's lawsuit would have been against WaMu were it still a going concern.

Plaintiff argues that Chase may be held liable for WaMu's conduct because Chase acquired

---

[6] Fifth Claim styled "Slander of Credit." (Compl. ¶ 5.1)

4

the loan between WaMu and Plaintiff. While there may be a valid theory of successor-in-interest liability in some circumstances, that theory does not apply to the facts here. According to the allegations in the Complaint, which are corroborated by judicially noticeable documents, the Property was sold to WaMu in a trustee's sale on June 6, 2008, and WaMu recorded its receipt of title to the Property on July 8, 2008. (*See* Compl. ¶ 2.1; Def.'s RJN Exhs. D, E) Thus, what Chase acquired among WaMu's assets was not the loan between Plaintiff and WaMu, but title to the Property itself. Other than selling the Property in March 2009, Plaintiff does not allege any action by Chase in regards to the *loan*, to the extent any obligation remained after the foreclosure.[7]

More fundamentally, Chase acquired WaMu's assets from the FDIC, the appointed receiver after WaMu failed. The FDIC as receiver "steps into the shoes" of the failed lending institution. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994). The FDIC as receiver also has broad powers under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183, to determine claims asserted against failed banks. *Rundgren v. Washington Mut. Bank, F.A.*, --- F.3d ---, No. 12-15368, 2014 WL 3720238, at *2 (9th Cir. 2014). To facilitate the FDIC's mandate, FIRREA "provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate." *Id.* (quoting *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012). "The comprehensive claims process allows the FDIC to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of the failed bank without unduly burdening the District Courts." *Id.* (quoting *Benson*, 673 F.3d at 1211 and *Henderson v. Bank of New Eng.*, 986 F.2d 319, 320 (9th Cir. 1993)) (internal citations and quotations omitted).

Most importantly, FIRREA "strips courts of jurisdiction over claims that have not been exhausted" through the FDIC's comprehensive claims process. *Id.* at *3; 12 U.S.C. §

---

[7] Plaintiff alleges that Chase "serviced" the WaMu loan "at a relevant time" but does not specifically identify that relevant time period. (Compl. ¶ 1.2) The judicially noticeable documents indicate that Chase did not enter the picture until after the Property had been sold. (*See* Def.'s RJN Exhs. A-F). By Plaintiff's own admission at the July 31 hearing, the misdeeds alleged in the Complaint were perpetrated by WaMu, not Chase.

5

1821(d)(13)(D). Courts have consistently interpreted FIRREA's jurisdictional bar to apply when a plaintiff sues a subsequent purchaser of a failed financial institution based solely on the misconduct of the failed institution. *See Rundgren*, 2014 WL 3720238, at *7 ("A claimant cannot circumvent the exhaustion requirement by suing the purchasing bank based on the conduct of the failed institution. Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process."); *Benson*, 673 F.3d at 1212-15; *Caires v. JP Morgan Chase Bank*, 745 F. Supp. 2d 40, 46-50 (D. Conn. 2010).

Here, although Plaintiff has only named Chase as a defendant, all of Plaintiff's claims relate to alleged acts or omissions by WaMu or some other party in connection with servicing, collecting, and foreclosing on Plaintiff's loan in 2008. Plaintiff's claims are thus functionally against WaMu and subject to FIRREA's mandatory claims procedure. Plaintiff has not alleged or indicated that he filed a claim with the FDIC. As such, the undersigned concludes that FIRREA strips this Court of jurisdiction to consider Plaintiff's claims until such time as he exhausts his claims through FIRREA's administrative process.[8]

### B. Leave to Amend

Based on the foregoing, it is clear that this Court lacks jurisdiction over any claims arising out of WaMu's acts or omissions in connection with servicing, collecting, and foreclosing on Plaintiff's mortgage. Thus, granting Plaintiff leave to allege claims against Chase for WaMu's conduct before September 25, 2008 would be futile. Although Plaintiff refers to "defendants" in the plural throughout the Complaint, the only named defendant is Chase. The only act that Chase allegedly committed was the sale of the Property in March 2009. (*See* Compl. ¶ 2.1) This fact, standing alone, is not sufficient to maintain a claim against Chase. Plaintiff indicated at the July 31, 2014 hearing that he believes Chase should be held liable due to Chase's acquisition of WaMu

---

[8] Because all of Plaintiff's claims—federal and state—rely on the same nucleus of alleged conduct by WaMu, the FIRREA jurisdiction stripping provision appears to infect the entire Complaint. As such, the Court finds that remanding Plaintiff's state law claims would be futile. *See Saffer v. JP Morgan Chase Bank*, 225 Cal. App. 4th 1239, 1248-53 (2014) (concluding FIRREA exhaustion requirement strips state court of subject matter jurisdiction).

1 but did not indicate that he had any grievances with Chase independent of Chase's relationship to
2 WaMu. Therefore, it appears that granting Plaintiff leave to amend to assert claims against Chase
3 that are not subject to the FIRREA administrative exhaustion requirement would be equally futile.

## IV. ORDER

For the foregoing reasons, it is HEREBY ORDERED that the action be DISMISSED for lack of subject matter jurisdiction. This dismissal is without leave to amend, and without prejudice to Plaintiff's right to re-file his claims after properly exhausting his administrative claims. The Clerk of the Court shall close the case file.

This order supersedes the Court's prior order at ECF 26, which contained a typographical error.

**IT IS SO ORDERED.**

Dated: August 1, 2014

_____
BETH LABSON FREEMAN
United States District Judge